# FRIERSON v. EWING.—222 S. W. (2d) 678.

Middle Section.   February 26, 1949.

Petition for Certiorari denied by Supreme Court, July 9, 1949.

Shelton & Shelton, of Columbia, for appellant.

Lewis S. Pope, of Nashville, for appellee.

FELTS, J: Complainant filed the bill herein to recover commissions for procuring for defendant a contract with Hoover & Mason Phosphate Company for the mining of phosphate on defendant's land. Defendant filed a plea, styled a plea in abatement, averring that the suit was for commissions claimed by complainant as a real estate agent, that complainant had failed to comply with Code Sections 1712-1728, and that he was therefore disabled to maintain the suit. Complainant joined issue on this plea.

The cause was heard upon the bill, the plea, and the testimony of complainant, defendant, and the county court clerk of Maury County. The Chancellor filed an opinion embodying his findings of fact and conclusions of law. He sustained the plea and dismissed the bill. Complainant appealed.

We summarize the Chancellor's findings. Complainant was a farmer owning lands in Maury County. He had been selling the phosphate in his lands for a number of years. He was an intimate friend of defendant, they having been to school and college together. Defendant William Howard Ewing was a lawyer in Nashville. Knowing of complainant's experience in selling his phosphate, defendant asked him to help defendant sell or lease the phosphate on defendant's lands in Maury County. He agreed to do this and defendant wrote him a letter evidencing their agreement as follows: "In the event that you are successful in either selling any part of or all of my phosphate property located about five miles from Columbia, Tennessee, to the Hoover & Mason

Phosphate Company, or are successful in getting from the Hoover & Mason Phosphate Company a contract for mining any or all of said property, I hereby agree to pay you for your services ten per cent of all monies received from Hoover & Mason Phosphate Company as soon as I receive same from them.''

On the receipt of this letter complainant set about to interest the Hoover & Mason Phosphate Company in the purchase or mining of the phosphate on defendant's lands. After some negotiations he procured that company to sign a contract with defendant for the mining of the phosphate, which contract will result in defendant receiving many thousand dollars by reason of complainant's services.

Complainant had not complied with Code Sections 1712-1728 regulating the business of real estate agents and salesmen. As stated, he had been a farmer and and had not been engaged in the business of real estate agent or salesman. On this point the chancellor found: ''The Court finds as a fact that Mr. Frierson has heretofore never engaged in the business of real estate agent or salesman, as contemplated by the statute. He has sold some of his own phosphate but has not done so for others. All of the phosphate lands from which he has sold phosphate were inherited by him except one tract purchased by him in 1918, from which he later sold the rock. Therefore, the Court finds that he is not a real estate agent or real estate salesman, nor did he engage in the business of dealing in real estate without a license. The Court finds that Mr. Ewing solicited his services in the sale of his phosphate. The question to be determined now, under this state of facts, is: Did Mr. Frierson engage in the business of real estate agent within the meaning of the Code provisions above cited?''

Treating complainant's appeal as a broad one bringing up the whole case, defendant has assigned error upon the Chancellor's findings that defendant solicited complainant's services and that complainant had not in fact engaged in the business of a real estate agent or salesman.

The Chancellor saw and heard the witnesses and was in better position to resolve the conflicts between them than are the members of this Court. We are satisfied with the Chancellor's findings and concur in them.

The Chancellor, though he found complainant had not in fact engaged in business as a real estate agent or salesman, felt bound by Winn v. Wright, 28 Tenn. App. 40, 185 S. W. (2d) 908, to conclude that complainant should be denied recovery.

We think his Honor pressed that authority too far. There the plaintiff was in fact a real estate broker. That was his vocation. He had an office with a licensed real estate agent; he had printed form contracts used by real estate agents; he solicited the listing from defendant and made inquiry as to other property of defendant, the price, and whether defendant would sell; and he held himself out as a real estate agent.

Being a real estate agent by vocation, there was no question but that he fell within the terms of the Act of 1919, Code Sections 1712-1718. He did claim that he had not actually engaged in his vocation, that he was not engaged in the real estate business, and that he had had but the one transaction in suit. The Court held that even so such transaction was forbidden by that Act; and quite properly so because the Act provided that any person who fell within its scope and failed to comply with it was guilty of a midemeanor in "each and every instance of such practice" (Code Sec. 1723).

But that case did not involve the construction, or the reach and scope, of that Act. It merely held that one within such scope could not recover under the single or isolated transaction rule, which allowed recovery under the revenue statutes, and which has been recognized in Wender v. Lobertini, 151 Tenn. 476, 267 S. W. 367, and like cases.

The case before us raises the question of construction, of the class of persons that come within the terms of the Act. Does it include only real estate agents and salesmen, or does it include a farmer who never had any but the one transaction in suit? If he falls within the scope of the Act, that transaction would be a misdemeanor. If complainant had been indicted for this transaction would the Act warrant his conviction? We think the reach of this penal statute is limited by its plain terms.

On examining this Act it will be seen that it provides: "No person shall engage in the business of a real estate agent or salesman without first . . ." Then follow numerous and detailed provisions about how a real estate agent or salesman must comply with the Act. It contains its own definition of both a real estate agent and a real estate salesman in these words:

"1721. Real estate agent is defined; dealing in notes. —A real estate agent, within the meaning of this law, is an individual, firm, or corporation engaged in the business of purchase or sale of real estate, or interests therein, or in the leasing, renting, or mortgaging of real estate, or interests therein, for others, or buying, selling or dealing in notes, as a whole or partial vocation. (1919, ch. 182, sec. 3.)

"1722. Real estate salesman is defined.—A real estate salesman, within the meaning of this law, is an in-

dividual who is employed by a real estate agent to negotiate the purchase or sale of real estate, or interests therein, or in the leasing, renting, or mortgaging of real estate, or interests therein, for others as a whole or partial vocation. (Ib.) ''

■ Thus to fall within such definition one must be engaged or employed in the real estate business, as there defined, ''as a whole or partial vocation.'' The word ''vocation'' is one in common use and means a calling or occupation or business in which one engages more or less regularly. Whether one is engaged in the real estate business, ''as a whole or partial vocation'', we think, is a question of fact to be determined upon all the circumstances appearing.

The older cases under the revenue statutes treated the question of whether one was engaged in the privileged business as a question of fact. They said one act did not of itself constitute doing business. But they laid down the rule that proof of an act characteristic of the privilege, or commonly incident to the conduct of the business declared a privilege, was prima facie evidence that the actor was exercising the privilege, and cast upon him the burden of proving that he was not in fact doing so. Anderson v. Sanderson, 25 Tenn. App. 425, 427, 158 S. W. (2d) 374, 375, and the cases there cited.

■ But where he made such proof he was allowed to recover on a single transaction, upon the theory that it did not amount to doing business. The terms as to the persons included in the police measure, the Act of 1919, Code Secs. 1712-1728, are even more specific and more restrictive than was the general term—doing business— under the revenue acts. So we think complainant in this case did not fall within the terms of that Act.

This conclusion as to the construction of the Act is supported by the construction given by other courts of acts more or less similar to ours. Sheppard v. Hulseberg, 171 La. 659, 131 So. 840; Noll v. Mastrup, 233 Iowa 1176, 11 N. W. (2d) 367, 368, and authorities there cited.

The decree of the Chancellor is reversed and the cause is remanded for an answer to the bill and other appropriate proceedings. The costs of the appeal are adjudged against defendant. The costs below will abide the outcome.

Howell and Hickerson, JJ., concur.