WOOLDRIDGE *v.* McFADDEN.

(*Jackson*, April Term, 1944.)

Opinion filed February 5, 1944.

JOSEPH NORVILLE, of Memphis, for complainant.

ANDERSON & BALLON and SAM TAUBENBLATT, all of Memphis, for defendant.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The original bill in this cause was filed in Division One of the Chancery Court of Shelby County, by Wooldridge against McFadden to collect one-half of a real estate broker's commission, on the allegation that complainant had furnished the defendant with the name of a prospective purchaser to whom defendant had subsequently made a sale. The parties will be referred to as they appeared in the Chancery Court. The defendant filed an answer in which he denied owing the commission and set up as a further defense that the complainant could not recover on the alleged contract because he was doing business as a real estate agent or broker, but had not complied with the law by (1) making application for license, (2) giving bond, or (3) paying the privilege tax, all of which were statutory requirements to be complied with before engaging in the business of a real estate agent or broker. It appears that after this answer, the complainant filed his application, made bond and paid tax in double amount for the period covered by the contract in litigation. He did not pay privilege taxes then delinquent against him for the period prior to the contract during which he had engaged in the real estate business without complying with the law.

The Chancellor dismissed the bill and the complainant prayed and was granted an appeal to the Court of Appeals, which, with a divided Court (one Judge dissenting),

reversed the Chancellor and entered a decree for the complainant. We granted certiorari on petition of defendant, have heard argument and the case is before us for disposition.

There is no dispute on the facts and the assignments of error, though four in number, present but one proposition of law—that the contract to split commissions was void because the complainant had not made statutory bond nor paid privilege taxes current and delinquent, when he undertook to enter into the contract and so to engage in the real estate business in violation of law.

Before the privilege of doing business could be exercised, even if all due and delinquent privilege taxes were paid, application had to be made under Code section 1715 and the required bond furnished and approved under Code section 1712.

In his decree of April 9, 1943, dismissing the bill the Chancellor held that complainant "could not recover" because (1) he did not have a real estate agent's or broker's license, (2) he had not made bond.

Recognizing the order in which an applicant had to comply with the requirements of law, the Court of Appeals said:

". . . so that in order to obtain the license the applicant must do three things, to-wit: (1) he must file an application with the county court clerk furnishing certain information; (2) he must execute a bond for $1000 payable to the State for the use and benefit of any person who may be injured by wrongful act or default of such real estate agent; and (3) he must pay the privilege tax as required under the Revenue Act.".

Although Chapter 182, Public Acts of 1919, has been amended in other particulars, Code, sec. 1712, with

regard to application and bond, is a re-enactment of section 1 of that Act in its exact language. The execution of a bond in exact conformity with section 1712 of the Code, and its filing and acceptance is a mandatory prerequisite without which the license is void. *Johnson* v. *Baker,* 149 Tenn., 613, 618, 619, 259 S. W., 909.

In a very recent case, wherein *certiorari* was denied by this Court, the Court of Appeals held that a contract made by a real estate dealer, who had not made the statutory bond, was *void,* because the dealer in making the contract committed a crime.

"Having acted in violation of the statute and committed a misdemeanor, and having entered into a void contract, can he thereafter validate this void contract as of its inception by complying with the law? We think not, for the statute itself provides 'and such defaulting person shall until said new bond is given suspend business.' In other words, he is expressly prohibited from carrying on business. He could not evade the provisions of this statute by carrying on business prior to the execution of the bond, and by thereafter executing the bond validate an illegal business carried on unlawfully prior to the execution of the bond. The case, as found by the chancellor, is controlled by the authority of *Johnson* v. *Baker,* 149 Tenn., 613, 259 S. W., 909." *Glascock* v. *Mansfield,* 25 Tenn. App., 401, 404, 158 S. W. (2d), 358, 360.

█ It is rudimentary that a *void* contract, having no existence in law, cannot be legalized by any subsequent ratification. *Carnes & Perry* v. *Polk,* 44 Tenn., 87, 95; *Cope* v. *Cope,* 5 Tenn. App., 169, 178; *Thruston* v. *Nashville & American Trust Co.,* D. C., 32 F. Supp., 929, 937.

■ Under the foregoing authorities, we are forced to hold that the contract for splitting commissions sued on in this case was void from its inception. The complainant committed a misdemeanor in entering into it without first giving the statutory bond required for real estate agents or brokers. He cannot therefore have the aid of a Court of Equity to enforce rights which arise from a contract, the making of which was illegal.

It is unnecessary to discuss the effect of the payment of privilege taxes, since we hold, under the authorities cited, that the giving and acceptance of the statutory bond was an indispensable prerequisite to engaging in the business of a real estate agent or broker, and that any contract entered into before the statutory bond was accepted, was void and incapable of subsequent ratification.

The assignments of error are sustained. The judgment of the Court of Appeals is reversed and the decree of the Chancellor is affirmed for the reasons stated in this opinion.